OPINION OF THE COURT
Per Curiam.
Respondent was admitted to the practice of law in New York by the First Judicial Department on March 4, 1985. At all times relevant herein, respondent maintained a principal place of business within this Judicial Department.
On June 6, 2007, respondent pleaded guilty in Supreme Court, New York County, to falsifying business records in the second degree in violation of Penal Law § 175.05 (1), a class A misdemeanor. On August 8, 2007, respondent was sentenced to three years probation and a fíne of $50,000.
On December 12, 2007, this Court granted the Committee’s-petition and deemed respondent’s misdemeanor conviction a “serious crime” pursuant to 22 NYCRR 603.12, and referred the matter to a Hearing Panel for a report and recommendation as to an appropriate sanction to impose.
At a hearing held on February 26, 2008, respondent admitted that his conviction was a serious crime and testified about the underlying facts and circumstances. Two character witnesses also testified and a third character witness submitted an affidavit. In posthearing submissions the Committee recommended that respondent be suspended coextensive with the length of his probationary sentence, namely three years from August 2007, but in no case less than one year. Respondent proposed public censure.
In a report dated September 12, 2008, the Hearing Panel recommended that respondent be suspended for a period of one year and suggested the Court consider certain factors in determining whether the suspension should commence on a nunc pro tunc date.
The Committee now moves for an order disaffirming in part the findings of fact, affirming the conclusions of law, disaffirming the recommendation as to sanction and, imposing a suspension for a period coextensive with respondent’s criminal probation, viz., three years from August 2007, but in no case less than one year.
*76 Respondent cross-moves for an order disaffirming in part the Hearing Panel’s findings of fact, affirming the conclusions of law, modifying the Panel’s recommendation as to sanction, and imposing a sanction of public censure.
The Hearing Panel found that respondent was vice president and general counsel to Take-Two Interactive Software, Inc., a maker of video games. In early 2002, NASDAQ made an official inquiry regarding the company’s financial statements and, in particular, whether any executive officers had received stock options which had not been issued under a stockholder-approved plan (nonplan options). Inasmuch as Take-Two had no chief financial officer, respondent responded to the inquiry.
Respondent testified at his deposition and before the Hearing Panel that, after consulting with outside counsel, he found out that two company executives had received nonplan options and he and the chairman and CEO of Take-Two, Ryan Brant, to whom respondent primarily reported, then asked outside counsel whether they could redesignate the nonplan options to plan options by the company. According to respondent, outside counsel did not object to that approach. Respondent testified that he believed that Brant had then gone back to accounting and had the options redesignated. Two days later, Brant told respondent that the nonplan options had indeed been so redesignated.
Accordingly, in a letter dated March 6, 2002, respondent advised NASDAQ that no nonplan options had been issued to any executives of the company; however, within a week, Brant told respondent that the nonplan options had not, in fact, been redesignated. Respondent testified that he then drafted a letter to NASDAQ, dated March 14, 2002, correcting the inaccurate information contained in the March 6 letter but, in several conversations with Brant about the letter, Brant deemed it to not be in the best interests of the company and requested that respondent not send the letter. Respondent acceded to Brant’s request and never sent the letter or otherwise corrected the false information given to NASDAQ.
Less than two months later, on May 2, 2002, respondent, on the advice of outside counsel, devised an internal ethics compliance questionnaire and certificate of compliance and had all appropriate employees of the company, including himself, sign it. Two questions asked were if he was aware of any company records that improperly described a transaction and if he was aware of any false entries made in the books and records of the *77 company. Respondent answered “no” to both inquiries. Admitting to the Hearing Panel that those responses were inaccurate, respondent testified that when he filled out the questionnaire, the March 6 letter was not on his mind. However, the Panel commented, “[w]e have difficulty understanding why it was not, but if, indeed it was not, it raises the question of the extent to which Respondent believed it necessary to provide accurate answers to questions whether from Nasdaq or in the internal company inquiry.”
Four years later, in June 2006, the New York County District Attorney commenced an investigation into the alleged backdating of stock options by Take-Two. During the course of that investigation, respondent was interviewed. In February 2007, the company’s CEO, Brant, pleaded guilty to charges arising from the backdating investigation. In May 2007, respondent was told by his lawyer that the District Attorney’s office intended to charge him with falsifying the company’s financial statements. Respondent was then offered a plea deal whereby he pleaded guilty to the misdemeanor of falsifying business records—the false business entry being the March 6 letter to NASDAQ. Notably, the factual basis recited in the plea agreement provided, in relevant part, that on or about March 6, 2002, “Kenneth Selterman knowingly prepared a letter containing false information addressed to Nasdaq and which he caused to be sent.”
As the Hearing Panel found, inasmuch as respondent does not dispute that he has been convicted of a “serious crime” within the meaning of Judiciary Law § 90 (4) (d) and Rules of this Court (22 NYCRR) § 603.12, the only issue to be determined is the sanction to be imposed.
In that regard, the Committee, in its current motion, as it did during the hearing, contends that respondent’s testimony concerning the facts underlying his guilty plea was inconsistent with the factual premise contained in his plea agreement, and, such an attempt to mitigate the seriousness of his criminal conduct constituted an aggravating factor. Specifically, the Committee contends that respondent’s testimony that he relied on Brant’s representation regarding the conversion of the nonplan options when he wrote his March 6th letter to NASDAQ differed from his admission in the plea agreement, which stated that he acted with intent to defraud NASDAQ in the first instance.
The Hearing Panel disagreed concluding that the facial inconsistency between respondent’s testimony and the plea agree *78 ment was apparent, but not dispositive, finding that it was certainly conceivable that respondent had always adhered to the substance of what he had testified to, but that for reasons of expediency the District Attorney’s office drafted the factual premise portion of the plea agreement in the simplest and most uncomplicated way possible. If that was what happened, the Panel stated that it had no concern.
In order to resolve the issue, the Panel suggested that respondent’s counsel at the time, Mr. Heiss, appear and provide information about the circumstances surrounding the plea but, ultimately, because of .a continuing SEC investigation and the uncertain effect of a limited waiver of attorney-client privilege, Mr. Heiss did not appear. Thus, the Panel found:
“The question remains—is respondent endeavoring to mitigate his conduct, thus demonstrating a lack of genuine remorse? On this issue, one which is open to competing interpretations, we decline to find an aggravating factor for two reasons. First, it is just as likely than not that respondent has consistently adhered to his factual recitations and that the plea agreement reflects the District Attorney’s streamlined version of events. Second, whether respondent knowingly presented inaccurate information in the first letter or purposefully failed to correct inaccurate information eight days later is a distinction of marginal significance in any event. Under either scenario, the crime has been committed and respondent admits it.”
In support of its motion, the Committee argues that a suspension coextensive with respondent’s three-year probationary period is justified but in no case less than a one-year suspension. In addition, the Committee asks this Court to reject the Hearing Panel’s suggestion that we impose a suspension nunc pro tunc because the Panel did not find that respondent had voluntarily ceased practicing law during that time, only that he was unemployed, and because this Court did not suspend respondent on an interim basis pending the resolution of the serious crime proceeding, therefore, he could have continued to practice law.
In support of censure, respondent points out that the Committee’s basis for a one-year suspension is aggravating factors which the Hearing Panel never found, and that respondent’s conduct demonstrated a “pattern” of fraud/dishonesty which *79 the Panel similarly did not find. While respondent cites to numerous misdemeanor cases where censure was imposed, he also seems to support the Panel’s suggestion of a retroactive suspension as it is “nearly the functional equivalent of a public censure.”
Taking into consideration the evidence considered by the Panel in mitigation, e.g., respondent’s prior unblemished disciplinary record; his cooperation with the Committee, the prosecutor, and the company’s internal investigation; and the character witnesses who attested to his reputation for honesty and integrity, we disagree with the Panel’s recommendation that respondent be suspended for one year. We also disagree with the Panel’s finding that the facial inconsistency between respondent’s testimony and the plea agreement had no bearing as to whether such inconsistency should be an aggravating factor in determining the appropriate sanction. Instead, we find that respondent’s inconsistent testimony about his culpability of the intentional fraud should have been construed as a lack of remorse, and his additional conduct of providing false answers on the company’s internal questionnaire and certificate of compliance demonstrated a “pattern” of fraud and dishonesty, which should be considered as evidence in aggravation. Therefore, in light of all the circumstances, including respondent’s position, his level of sophistication and legal experience, and his apparent lack of remorse, we find that a three year suspension is appropriate.
Accordingly, the Committee’s motion should be granted to the extent of disaffirming the recommendation as to sanction and that respondent instead be suspended for three years or as long as he remains on probation, whichever is longer, and until further order of the Court, and otherwise confirming the Hearing Panel report.
The cross motion should be granted to the extent of confirming the Hearing Panel’s conclusions of law, and be otherwise denied.
Gonzalez, EJ., Tom, Andreas, Buckley and Sweeny, JJ., concur.
Respondent suspended from the practice of law in the State of New York for a period of three years, effective the date hereof and until further order of this Court, as indicated. Cross-motion granted to the extent indicated, and otherwise denied.